UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEROME ANDERSON, | : |
| Plaintiff, | : Case No. _____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| STRONGBRIDGE BIOPHARMA PLC, JOHN H. JOHNSON, GARHENG KONG, DAVID N. GILL, JEFFREY W. SHERMAN, MARTEN STEEN, and HILDE H. STEINEGER, | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Plaintiff Jerome Anderson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  This action is brought by Plaintiff against Strongbridge Biopharma plc ("Strongbridge" or the "Company") and the members of Strongbridge's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Strongbridge will merge with Xeris Pharmaceuticals, Inc. ("Xeris") through Xeris Biopharma Holdings, Inc. ("HoldCo"), and Wells MergerSub, Inc. ("MergerSub") (the "Proposed Transaction").

2.      On May 24, 2021, Strongbridge and Xeris issued a joint press release announcing that they had entered into a Transaction Agreement dated May 24, 2021 (the "Transaction Agreement").  Under the terms of the Transaction Agreement, each Strongbridge shareholder will receive: (i) 0.7840 of a newly issued share of HoldCo common stock; and (ii) one non-tradeable contingent value right ("CVR") for each Strongbridge share they own (the "Merger Consideration").  Each CVR will represent a contractual right to receive future conditional payments worth up to an aggregate amount of $1.00, settleable in cash, additional shares of HoldCo common stock, or a combination of cash and additional shares of HoldCo common stock, upon the achievement of certain regulatory or sales milestones relating to Strongbridge's products, Keveyis and Recorlev.  Upon close of the Proposed Transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.  The Proposed Transaction is valued at approximately $267 million.

3.      On July 29, 2021, Strongbridge filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Strongbridge stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Strongbridge's and Xeris's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor MTS Securities, LLC ("MTS"); and (iii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Strongbridge stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, Strongbridge's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Strongbridge's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Strongbridge.

9. Defendant Strongbridge is an Ireland corporation, with its principal executive offices located at 900 Northbrook Drive, Suite 200, Trevose, Pennsylvania 19053. Strongbridge

is a global commercial-stage biopharmaceutical company. Strongbridge's shares trade on the Nasdaq Global Select Market under the ticker symbol "SBBP."

10. Defendant John H. Johnson ("Johnson") has been Chief Executive Officer ("CEO") of the Company since July 2020 and a director since March 2015. Defendant Johnson previously served as Chairman of the Board from March 2015 until November 2019, and as Executive Chairman from November 2019 until July 2, 2020.

11. Defendant Garheng Kong ("Kong") has been Chairman of the Board since July 2020 and a director of the Company since September 2015. Defendant Kong previously served as Lead Independent Director from November 2019 through July 2020.

12. Defendant David N. Gill ("Gill") has been a director of the Company since September 2019.

13. Defendant Jeffrey W. Sherman ("Sherman") has been a director of the Company since October 2016.

14. Defendant Mårten Steen ("Steen") has been a director of the Company since December 2014.

15. Defendant Hilde H. Steineger ("Steineger") has been a director of the Company since January 2014.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. Xeris is a Delaware corporation with its principal executive offices located at 180 N. LaSalle Street, Suite 1600, Chicago, Illinois 60601. Xeris is a pharmaceutical company delivering innovative solutions to simplify the experience of administering important therapies

that people rely on every day around the world. With a novel technology platform that enables ready-to-use, room-temperature stable formulations of injectable and infusible therapies, Xeris is advancing a portfolio of solutions in various therapeutic categories, including its first commercial product, Gvoke in the U.S. Its proprietary XeriSol and XeriJect formulation technologies have the potential to offer distinct advantages over conventional product formulations, including eliminating the need for reconstitution, enabling long-term, room-temperature stability, significantly reducing injection volume, and eliminating the requirement for intravenous ("IV") infusion. Xeris's common stock trades on the Nasdaq Global Select Market under the ticker symbol "XERS."

18. HoldCo is a Delaware corporation formed for the purpose of holding Xeris and Strongbridge as direct subsidiaries following completion of the Proposed Transaction.

19. MergerSub is a Delaware corporation and a direct, wholly owned subsidiary of HoldCo.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Strongbridge is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs. Strongbridge's rare endocrine franchise includes RECORLEV (levoketoconazole), an adrenal steroidogenesis inhibitor with a New Drug Application ("NDA") that is currently under review by the U.S. Food and Drug Administration ("FDA") for the treatment of endogenous Cushing's syndrome, and veldoreotide extended release, a pre-clinical next-generation somatostatin analog being investigated for the treatment of acromegaly and potential additional applications in other conditions amenable to somatostatin receptor activation. Both RECORLEV and veldoreotide have

received orphan drug designation from the FDA and the European Medicines Agency. The Company's rare neuromuscular franchise includes KEVEYIS (dichlorphenamide), the first and only FDA-approved treatment for hyperkalemic, hypokalemic, and related variants of primary periodic paralysis. KEVEYIS has orphan drug exclusivity in the United States.

21.     On August 5, 2021, the Company announced its first quarter 2021 financial results. Strongbridge achieved KEVEYIS net product sales of $10.0 million for the second quarter ended June 30, 2021, representing a 28% increase over second quarter 2020 revenue of $7.8 million. For the three months ended June 30, 2021, basic net loss attributable to ordinary shareholders on a GAAP basis was ($13.2 million), or ($0.20) per share, compared to a basic net loss attributable to ordinary shareholders of ($17.3) million, or ($0.32) per share, for the same period in 2020. For the three months ended June 30, 2021, non-GAAP basic net loss attributable to ordinary shareholders was ($4.5 million), or ($0.07) per share, compared to a non-GAAP basic net loss attributable to ordinary shareholders of ($6.7 million), or ($0.12) per share, for the same period in 2020. Reflecting on the results and looking to the future, defendant Johnson stated:

> Strongbridge had an exceptional second quarter, with KEVEYIS® (dichlorphenamide) delivering the highest net revenue for a quarter since its launch by the Company in 2017. Given our strong first half performance, we expect to meet, or potentially exceed, the higher end of our full-year 2021 KEVEYIS revenue guidance of $34 million to $36 million. Additionally, against the backdrop of the recent announcement of the proposed acquisition of Strongbridge by Xeris, we remain focused on delivering strong revenue growth for KEVEYIS, on the continued review of RECORLEV® (levoketoconazole) by the FDA, and on flawlessly executing the myriad of RECORLEV pre-launch activities. Strongbridge and Xeris are working closely on all of the required steps toward the expected close of the transaction early in the fourth quarter of this year. Upon transaction close, we look forward to unlocking the value of our combined assets and providing shareholders with the opportunity to participate in the success of the Company.

22.     Additionally, in July 2021, the Company announced post hoc analyses from a one year open-label study evaluating daily use of KEVEYIS for the treatment of Primary Periodic

Paralysis ("PPP"). The analyses were published in the peer-reviewed journal, Muscle & Nerve, and confirmed that long-term treatment with KEVEYIS is safe and effective for chronic use. In May 2021, the Company announced that the FDA had accepted for review the Company's NDA for RECORLEV for the treatment of endogenous Cushing's syndrome. Within the Day 74 letter, the FDA set a Prescription Drug User Fee Act target action date of January 1, 2022, which reflects a projected 10-month standard review period. In June 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,020,393 entitled, "Methods of Treating Disease with Levoketoconazole" which covers a method of treating Cushing's syndrome patients with RECORLEV (levoketoconazole) who also take metformin for Type 2 diabetes. The term of the U.S. patent will expire on March 2, 2040.

**The Proposed Transaction**

23. On May 24, 2021, Strongbridge and Xeris issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> CHICAGO & DUBLIN & TREVOSE, Pa. -- Xeris Pharmaceuticals, Inc. ("Xeris") (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc ("Strongbridge") (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris common stock of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").

Under the terms of the agreement at closing, Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own. Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021. Strongbridge shareholders will also receive 1 non-tradeable CVR for each Strongbridge ordinary share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings common stock (at Xeris Biopharma Holdings' election) upon achievement of the following triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per ordinary share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per ordinary share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per ordinary share). The minimum payment on the CVR per Strongbridge ordinary share is zero and the maximum payment is $1.00 in cash or Xeris Biopharma Holdings common stock, at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.

"This is a very compelling transaction that will create a scalable and diversified biopharmaceutical company increasingly oriented toward more specialty and rare disease products, positioning us for long-term product development and commercial success," said Paul R. Edick, Chairman and Chief Executive Officer of Xeris. "Strongbridge's attractive rare disease portfolio and capabilities are highly complementary with Xeris. Building on the continuing prescription growth of Gvoke® with an enhanced and diversified growth profile, expanded and scalable salesforce, and expected cost-synergies, the combined company will be well positioned to deliver compelling long-term value to shareholders. We look forward to welcoming the Strongbridge team to Xeris and leveraging our differentiated portfolios and technologies to help the patients we serve improve their quality of life."

"We are excited to combine with Xeris to drive the next phase of our growth," said John H. Johnson, Chief Executive Officer of Strongbridge. "Strongbridge has made significant progress advancing its portfolio of therapies for rare endocrine and rare neuromuscular diseases with focus, commitment and passion for the patients and physicians that we serve. This includes delivering strong revenue growth for KEVEYIS® (dichlorphenamide), our first commercial, rare neuromuscular product, and the successful development of RECORLEV® (levoketoconazole), which is under review for approval by the FDA with expected commercialization in the first quarter of 2022 pending FDA approval. Through this combination with Xeris, we will gain additional scale and financial resources to

better meet the unmet needs of those we serve.  Our combined pipeline, drug development talent and commercial infrastructure will enable us to accelerate product launches and drive further growth.  We look forward to working closely with the Xeris team to unlock the potential value of our combined assets, while providing our shareholders with the opportunity to participate in the success of the combined company."

**Strategic Rationale and Financial Benefits of the Transaction**

The combination of Xeris and Strongbridge is expected to deliver compelling strategic and financial benefits including:

- **Diversified and Increased Revenue Growth**. The combined company is expected to have a stronger revenue base with two rapidly growing commercial assets in Gvoke® and KEVEYIS®, and a near-term product launch in RECORLEV®.  Gvoke® sells in a multi-billion dollar addressable market, as will RECORLEV®, if approved.  With approval of RECORLEV® by the FDA, Xeris' experienced, endocrinology-focused commercial infrastructure is expected to enable a rapid product launch for RECORLEV® into the endocrinology community.  With Gvoke®, KEVEYIS® and RECORLEV®, the combined company will boast multiple, highly differentiated, growing, commercial assets that could have significant combined revenue potential, supported by a larger and more efficient commercial organization.

- **Significant Potential Synergies**. The combined company is expected to generate approximately $50 million in pre-tax synergies by the end of 2022 resulting from immediate savings, including redundant general, administrative and other public company costs, and from the avoidance of future costs, most notably within the commercial and medical affairs functions.  Shareholders of the combined company are expected to benefit from significant cost avoidance and the potential for more rapid and achievable near-term growth by utilizing Xeris' existing commercial infrastructure to launch RECORLEV® soon after product approval. Xeris' management and the independent Xeris directors are committed to retaining and incentivizing the most talented individuals in their respective functions between the two companies to ensure continuity and ongoing success.

- **Specialized Commercial Platform**. The combined company will have a robust rare disease and endocrinology-focused commercial infrastructure, primed to bring the benefits of the company's products to a wider range of patients with unmet needs.  At closing, the organization will have approximately 110 field sales representatives, as well as 50 inside sales and support employees, and a fully operational patient and provider support

team, enabling a rapid potential product launch for RECORLEV® in the first quarter of 2022, as well as enhanced sales across the entire portfolio.

- **Expanded Development Pipeline**. In addition to RECORLEV®, the combined company will have a robust pipeline of development programs to extend the current marketed products into important new indications and uses and bring new products forward using its formulation technology platforms, supporting long-term product development and commercial success.

- **Strengthened Strategic Profile**. This transaction will enable the combined company to have a scalable infrastructure for continued development of specialist oriented and rare disease products from its proprietary XeriSol™ and XeriJect™ formulation technologies, as well as consolidation of commercial- and late development-stage products and companies focused on endocrinology and rare diseases.

- **Improved Access to Capital Markets**. With enhanced scale, multiple revenue generating commercial assets and a high potential value near-term development pipeline, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the debt and equity markets at a lower cost of capital.

**Additional Information**

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, IL. On close, Xeris shareholders will exchange each share of Xeris common stock they own for 1 share of Xeris Biopharma Holdings common stock.

Xeris Chairman and CEO, Paul Edick, will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings.  The Xeris Biopharma Holdings board will comprise the other existing Xeris directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors.  A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings' shares of common stock are expected to trade on the Nasdaq Global Select Market (Nasdaq) under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions and approval by Xeris and Strongbridge shareholders.

In addition, certain Strongbridge directors, executive officers, CAM Capital and HealthCap VI, L.P., representing approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

SVB Leerink is acting as financial advisor to Xeris, and Goodwin Procter LLP and A&L Goodbody LLP are serving as legal counsel. MTS Health Partners, LP is acting as financial advisor to Strongbridge, and Skadden, Arps, Slate, Meagher & Flom, LLP and Arthur Cox LLP are serving as legal counsel.

**Insiders' Interests in the Proposed Transaction**

24. Strongbridge insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Strongbridge.

25. Notably, certain Company insiders have secured positions for themselves with the combined company. For example, the Transaction Agreement provides that defendants Johnson and Kong will join the combined company's board as new independent directors, and defendant Sherman, who currently serves on the Xeris board, will continue to serve on the HoldCo board following completion of the Proposed Transaction.

26. Moreover, Strongbridge insiders stand to reap substantial financial benefits for securing the deal with Xeris. Pursuant to the Transaction Agreement, all outstanding Company Restricted Stock Units will vest and convert into the right to receive the Merger Consideration. The following table summarizes the value of Restricted Stock Units that Company insiders stand to receive:

| Executive Officers | Number of Restricted Stock Units Held (#) | Value of Shares Deliverable in Respect of Unvested Restricted Stock Units ($) |
|---|---|---|
| John H. Johnson | 770,166 | 2,010,133 |
| Richard S. Kollender | 287,500 | 750,375 |
| Fredric Cohen, M.D. | 181,000 | 472,410 |
| Stephen Long | 143,500 | 374,535 |
| Scott Wilhoit | 113,000 | 294,930 |
| **Directors** | | |
| David Gill | 40,000 | 104,400 |
| Garheng Kong, M.D. | 40,000 | 104,400 |
| Jeffrey W. Sherman, M.D. | 40,000 | 104,400 |
| Mårten Steen, M.D. | 40,000 | 104,400 |
| Hilde H. Steineger, M.D. | 40,000 | 104,400 |

27. Further, in connection with the Proposed Transaction, Strongbridge has established a retention bonus pool (the "Retention Bonus Pool"), payable upon the closing of the Proposed Transaction, subject to the recipient's continued employment through closing of the merger. Certain of Strongbridge's executive officers have received allocations of retention awards pursuant to the Retention Bonus Pool, as set forth in the following table:

| Name | Retention Bonus ($) |
|---|---|
| John H. Johnson | 500,000 |
| Richard S. Kollender | 400,000 |
| Fredric Cohen, M.D. | 300,000 |
| Stephen Long | 300,000 |
| Scott Wilhoit | 300,000 |

28. In addition, if they are terminated in connection with the Proposed Transaction, Strongbridge insiders stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Estimated Severance ($) | Estimated Value of Benefit Continuation ($) |
|---|---|---|
| John H. Johnson | 1,964,296 | 54,975 |
| Richard S. Kollender | 1,130,941 | 39,327 |
| Fredric Cohen, M.D. | 1,027,702 | 39,327 |
| Stephen Long | 902,263 | 39,327 |
| Scott Wilhoit | 897,363 | 39,327 |

**The Proxy Statement Contains Material Misstatements and Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Strongbridge's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Strongbridge's and Xeris's financial projections; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor MTS; and (iii) the background of the Proposed Transaction. Accordingly, Strongbridge stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Strongbridge's and Xeris's Financial Projections*

31. The Proxy Statement omits material information regarding Strongbridge's and Xeris's financial projections.

32. For example, the Proxy Statement fails to quantify the "internal assumptions prepared by Strongbridge management" underlying the "April 8 Strongbridge Projections" and the "Strongbridge Management Projections," including the internal assumptions:

> about the probability of technical success and probability of regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market share, market exclusivity, research and development expenses, sales and marketing expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevantfactors related to Strongbridge's long-term operation plan.

Proxy Statement at 83.

33. Additionally, the Proxy Statement fails to identify the investment bank that produced the equity report underlying the development of the "Strongbridge April 8 Xeris Projections."

34. The omission of this information renders the statements in the "Strongbridge Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning MTS's Financial Analyses*

35. The Proxy Statement also describes MTS's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of MTS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Strongbridge's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Strongbridge's stockholders.

36. With respect to MTS's *Discounted Cash Flow Analysis* of Strongbridge and Xeris, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate ranges of 12% to 14% and 10% to 12% for Strongbridge and Xeris, respectively; and (ii) the basis for assuming no terminal value in the analysis and not taking into account the cost of future capital raises.

37. With respect to MTS's *Public Trading Comparable Companies Analysis* for both Strongbridge and Xeris and *Precedent M&A Transaction Analysis* of Strongbridge, the Proxy

Statement fails to disclose the individual multiples and financial metrics of each company and transaction observed by MTS in the analyses.

38. The omission of this information renders the statements in the "Opinion of Strongbridge's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

39. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

40. For example, the Proxy Statement fails to disclose whether the confidentiality agreement the Company entered into with the party identified in the Proxy Statement as "Party B" that contains a standstill provision that is effective until January 2022 (Proxy Statement at 60), is a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding Party B from submitting a topping bid for the Company.

41. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

42. Any reasonable Strongbridge stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

43. The omission of this material information renders the statements in the "Background of the Transaction" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Strongbridge will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Strongbridge's and Xeris's financial projections, the inputs and assumptions underlying MTS's financial analyses and the

background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Strongbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Strongbridge, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Strongbridge stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Strongbridge, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Strongbridge stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 27, 2021                                WEISSLAW LLP

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*